**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 13-cv-00403-RM-BNB

HUGH WALTON,

      Applicant,

v.

FRANCIS FALK, Warden, L.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING 28 U.S.C. § 2254 APPLICATION

---

      Applicant, Hugh Walton, is a prisoner in the custody of the Colorado Department

of Corrections (DOC) who currently is incarcerated at the correctional facility in Sterling,

Colorado.  Mr. Walton, acting *pro se*, filed an Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (ECF No. 1) challenging the validity of his conviction in

Case No. 98CR2420 in Arapahoe County, Colorado, district court.  He paid the $5.00

filing fee.  After reviewing the record, including the habeas corpus application, the

answer, the state court record, and the traverse, the Court concludes that the

application should be denied and the case dismissed with prejudice.

## I.  Federal Habeas Corpus Proceedings

      In an order entered on February 15, 2013, Magistrate Judge Boyd N. Boland

directed Respondents to file a pre-answer response limited to addressing the affirmative

defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court

remedies under 28 U.S.C. § 2254(b)(1)(A) if Respondents intend to raise either or both

of those affirmative defenses in this action.  On March 19, 2013, after being granted an

extension of time, Respondents filed their pre-answer response (ECF No. 9).  On May

13, 2013, after being granted extensions of time, Mr. Walton filed a reply (ECF No. 15)

to the pre-answer response.

On August 29, 2013, the Court entered an order (ECF No. 18) denying the

application in part.  Specifically, claim 10 was dismissed for failure to state a cognizable

federal constitutional claim.  Claims 1(a), 2, 7(b), 8, and 9 were dismissed as

procedurally defaulted.  In the August 29 order, the Court also directed Respondents to

file within thirty days after the filing of the state court record an answer that fully

addressed the merits of exhausted claims 1(b), 3, 4, 5, 6(a), 6(b), 7(a), and 7(c).  In a

separate order entered on August 29 (ECF No. 19), the Court directed Respondents to

provide the state court record, which was submitted on September 6, 2013 (ECF No.

24).  On September 26, 2013, Respondents filed their answer (ECF No. 25).  On

November 22, 2013, Mr. Walton filed a traverse (ECF No. 32).  Claims 1(b), 3, 4, 5,

6(a), 6(b), 7(a), and 7(c) remain pending.

## II.  Background and State Court Proceedings

Mr. Walton was convicted by a jury in Arapahoe County District Court Case No.

98CR2420 on two counts of aggravated robbery, one count of theft, two counts of

menacing, and one count of crime of violence.  ECF No. 9, ex. B (*People v. Walton*, No.

01CA2119 (Colo. Ct. App. May 13, 2004) (unpublished)) at 2.  Following the trial court's

determination that Mr. Walton had been convicted of felonies on four prior occasions, he

was sentenced as an habitual offender to an aggregate term of 128 years of

imprisonment in the DOC.  ECF No. 9, ex. B at 3.

On May 13, 2004, Mr. Walton's convictions and sentence were affirmed on direct

appeal.  ECF No. 9, ex. B.  On December 10, 2004, he filed a postconviction motion

pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure, ECF No. 9, ex. A at 17, which the trial court appears to have denied on August 25, 2005.  ECF No. 9, ex. A at 16.  On appeal, the Colorado Court of Appeals on May 31, 2007, affirmed in part, reversed in part, and remanded the case for a hearing on a claim of ineffective assistance of trial counsel.  *People v. Walton*, No. 05CA2262 (Colo. Ct. App. May 31, 2007), published at 167 P.3d 163 (Colo. Ct. App. 2007).  On June 1, 2010, after three days of hearings, the trial court denied the claim.  ECF No. 9, ex. A at 10.  On August 30, 2012, the Colorado Court of Appeals affirmed.  ECF No. 9, ex. C (*People v. Walton*, No. 10CA1298) (Colo. Ct. App. Aug. 30, 2012) (unpublished)).  On January 28, 2013, the Colorado Supreme Court denied certiorari review.  ECF No. 9, ex. N.

III.  Analysis

A.  Standard of Review on the Merits

The Court must construe liberally Mr. Walton's filings because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Walton bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

Although *Richter* concerned a state-court order that did not address any of the defendant's claims, its presumption is applicable when a state-court opinion addresses some but not all of those claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013). For purposes of § 2254(d), when a state court rules against a defendant in an opinion that rejects some of the defendant's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Id.* at 1094-96. Federal habeas courts should not assume that any unaddressed federal claim simply was overlooked because a state court does not uniformly discuss separately every claim referenced by a defendant. *Id.*

4

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Walton seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

5

> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts. *Id*. at
> 407-08.  Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather that application must also be unreasonable." *Id*. at 411.  "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable
> requires considering the rule's specificity.  The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations.  [I]t is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (citation and internal quotation marks omitted).  In conducting

this analysis, the Court "must determine what arguments or theories supported or . . .

could have supported[] the state court's decision" and then "ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with

the holding in a prior decision of [the Supreme] Court." *Id*.  In addition, "review under §

2254(d)(1) is limited to the record that was before the state court that adjudicated the

6

claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Walton bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

7

B. <u>Claims</u>

Exhausted claims 1(b), 3, 4, 5, 6(a), 6(b), 7(a), and 7(c) remain pending.  The

Court now will address the merits of these claims.  Retaining the numbering in the

application, the claims are:

> (1)    The police continued to question Applicant after he expressed a desire not to answer questions without an attorney present.  This violated his rights as required by the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), to:
> (b)    have counsel present.  ECF No. 1 at 5.

> (3)    The Fourteenth Amendment was violated by the introduction at trial of the statements Applicant made to the police following his alleged request to speak with an attorney.  *Id.*[1]

> (4)    Applicant was denied due process and a fair trial by the introduction at trial of identification evidence based on unduly suggestive procedures.  *Id.* at 7.

> (5)    Applicant was denied due process by the introduction at trial of evidence of other robberies he committed.  *Id.*

> (6)    Applicant's rights to testify and to present a defense were violated when the trial court:
> (a)    limited some of his answers on cross-examination to "yes" or "no," and
> (b)    did not allow him to testify concerning the circumstances surrounding one of his prior felony convictions.  *Id.*

> (7)    Ineffective assistance of counsel based on trial counsel's failure to:
> (a)    challenge Applicant's detention under the Interstate Agreement on Detainers Act, and

> (c)    sufficiently investigate and present exculpatory evidence.  *Id.* at 8.

---

[1]    Claims 1(b) and (3) have been reworded to eliminate the reference in claim 1(a). which was dismissed as procedurally barred, that Mr. Walton invoked a right to remain silent disregarded by the police.  *See* ECF No. 18 at 11-13.

Claims 1(b) and 3

In claims 1(b) and 3, Mr. Walton argues that the police continued to question him after he requested counsel, and that his statements were thereafter admitted against him at trial in violation of his right to counsel under the Fifth and Fourteenth amendments and *Miranda*.

The Fifth Amendment privilege against self-incrimination includes the right to have a lawyer present during custodial interrogation. *Miranda*, 384 U.S. at 470. An essential element of *Miranda* is that a suspect who commences answering questions without an attorney present may change his or her mind at any time thereafter in light of the questions being asked. If an accused "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Id.* at 444-45. A suspect has a right to counsel during custodial interrogation in order to dispel the "compelling atmosphere" of the interrogation. *Id.* at 465. The denial of a suspect's request for an attorney undermines his or her ability to exercise the privilege against self-incrimination, "to remain silent if he [chooses] or to speak without any intimidation, blatant or subtle." *Id.* at 466.

Whether an accused has invoked the right to counsel during questioning is an objective inquiry. The United States Supreme Court has held that the inquiry requires the trial court to consider whether the accused's statement "'can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis v. United States*, 512 U.S. 452, 459 (1994) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). If the desire for counsel is presented "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for

an attorney," no ambiguity or equivocation exists, and all questioning must cease until

the person can consult counsel or the accused voluntarily reinitiates conversation.

*Davis*, 512 U.S. at 459.

The Colorado Court of Appeals considered and rejected claims 1(b) and 3 as

follows:

> Defendant concedes on appeal that he was initially advised of and waived his <u>Miranda</u> rights.  However, he asserts that he subsequently invoked his rights . . . to the assistance of an attorney and the police improperly continued to interrogate him anyway.  We are not persuaded.
>
> . . . .
>
> With respect to the right to counsel, under <u>Miranda</u> and its progeny, a suspect who, during custodial interrogation, "commences answering questions without an attorney present may change his or her mind at any time thereafter in light of the questions being asked."  <u>People v. Romero</u>, 953 P.2d 550, 553 (Colo. 1998).  The police are obliged to stop questioning a suspect if the suspect makes an unambiguous request to consult with counsel; they are not, however, required to stop questioning a suspect or even clarify a suspect's wishes when the suspect makes only an ambiguous or equivocal request for the assistance of counsel.  <u>Davis v. United States</u>, 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362, 371 (1994); <u>People v. Romero</u>, <u>supra</u>.
>
> A request is ambiguous if it is of a type that gives rise to opposing inferences.  A request is not ambiguous – and all interrogation must cease until the accused consults with counsel or voluntarily reinitiates conversation with the police – "[i]f the desire for counsel is presented '<u>sufficiently clearly</u> that a reasonable police officer <u>in the circumstances</u> would understand the statement to be a request for an attorney.'"  <u>People v. Romero</u>, <u>supra</u>, 953 P.2d at 554 (quoting <u>Davis v. United States</u>, <u>supra</u>, 512 U.S. at 459, 114 S.Ct. at 2355) (emphasis added in <u>Romero</u>).
>
> We give a broad, rather than narrow, interpretation to a defendant's request for counsel.  Therefore, whether an

accused has unambiguously requested counsel is an objective inquiry, dependent upon the totality of the circumstances, and reviewable on appeal as a mixed question of fact and law.  People v. Romero, supra, 953 P.2d at 555.

At the suppression hearing, defendant did not testify and the videotape of the interrogation was not admitted into evidence.  In response to defense questioning, an officer acknowledged that defendant made statements to the effect that (1) because the officer was not in position to "cut a deal," defendant would or might talk to him when he was with a prosecutor and a lawyer; and (2) if the police wanted to extradite him to Colorado, he would sit down with an attorney and district attorney and talk.

The trial court found that, although "[q]uestions were asked of the defendant . . . at no time did the defendant indicate that he at any point wanted to speak with an attorney . . . all he indicated was he would talk to the district attorney with a lawyer and make a statement."

Upon review of the record, we agree with the trial court that defendant's statements that he "would" at some future point give a statement to an attorney and district attorney did not unambiguously convey a desire for the assistance of counsel at that time.  See Davis v. United States, supra, 512 U.S. at 462, 114 S.Ct. at 2357 ("Maybe I should talk to a lawyer" did not invoke right); Lord v. Duckworth, 29 F.3d 1216, 1218, 1221 (7th Cir. 1994) (suspect's remark referencing "future access to counsel for a court hearing rather than a request for counsel at that time" not sufficient to constitute an unequivocal request for counsel, for it lacks "the clear implication of a present desire to consult with counsel"); Williams v. State, 368 S.E.2d 742, 746 (Ga. 1988) (defendant's attempt to make a deal with interrogator was not invocation of right to counsel); State v. Charboneau, 913 P.2d 308, 318 (Or. 1996) ("Will I have an opportunity to call an attorney tonight?" readily suggests that he was not invoking his right to speak to a lawyer at that time but might do so in the future).

Consequently, we, like the trial court, conclude that the police were not required to cease interrogating defendant as a result of his hypothetical and equivocal references to counsel.

ECF No. 9, ex. B at 3-6.

The state court's factual findings regarding the evidence presented at trial are presumptively correct.  *See* 28 U.S.C. § 2254(e)(1).  Mr. Walton does not present any clear and convincing evidence to overcome the presumption of correctness.  The Colorado Court of Appeals' decision and the state court record make clear that Mr. Walton initially waived his right to counsel after a proper *Miranda* advisement and later, although he made a reference to counsel, failed to make an unambiguous or unequivocal request for counsel while in custody and being questioned by police.  *See* ECF No. 24, trial tr., 111/pdf 136, 114-115/pdf 139-140, 117-119/pdf 142-144, 124-126/pdf 149-151, 128-129/pdf. 153-154, Oct. 25, 2000 (hearing on motions, including Motion to Suppress Statements).  The record shows Mr. Walton's comment that he would give a statement to an attorney and district attorney at some future point failed to convey unambiguously a desire for the assistance of counsel at the time.

Mr. Walton also fails to demonstrate the state court's ultimate conclusion based on its factual findings – that the police were not required to cease interrogating Mr. Walton as a result of his "hypothetical and equivocal references to counsel,"  ECF No. 9, ex. B at 6 – is either contrary to or an unreasonable application of clearly established federal law.  He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.  He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" *Richter*, 131 S. Ct. at 786-87.  The Court finds that the state appeals

court decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

Claim 4

As his fourth claim, Mr. Walton contends he was denied due process and a fair trial by the introduction at trial of identification evidence based on unduly suggestive procedures.  Specifically, he argues constitutional violations by the admission of identification evidence based on an unduly suggestive photo array.  Mr. Walton contends he appeared much older than the men in the other photos, was the only man in the photos wearing jail clothing, and was the only man with his hair in a ponytail, wearing an earring, and bearing a birth mark on his face.

"When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry:  first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances."  *United States v. Sanchez*, 24 F.3d 1259, 1261-62 (10th Cir. 1994) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968), and *Johnston v. Makowski*, 823 F.2d 387, 391 (10th Cir.1987)).  The Court need not reach the second prong unless the Court first determines that the array was impermissibly suggestive.  *Johnston,* 823 F.2d at 391.  To determine whether a photo array was impermissibly suggestive, the Court considers the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves.  *Sanchez*, 24 F.3d at 1262.  A six-person photograph lineup is not per se unconstitutional.  *Id.* at 1262.

Citing *Simmons*, the state appellate court addressed Mr. Walton's due process claim in the state postconviction proceeding under a primarily state law standard that is

13

virtually identical to the federal standard.  *See* ECF No. 9, ex. B at 13-17.  The appellate court resolved Applicant's fourth claim as follows:

> A defendant is denied due process by an out-of-court identification procedure which is so suggestive that it renders unreliable any resulting identification testimony. <u>Simmons v. United States</u>, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

> In challenging the admissibility of identification evidence under the Due Process Case Clause, the defendant bears the burden of showing that the identification procedure, here, the use of a photo array, was impermissibly suggestive.  If the defendant meets that burden, the evidence is inadmissible unless the prosecution demonstrates that the identification was reliable despite the improper suggestiveness.  <u>Bernal v. People</u>, . . . 44 P.3d [184, 191 (Colo. 2002)].

> Because the resolution of defendant's due process challenge involves a mixed question of fact and law, we give deference to the trial court's findings of historical fact, but may give different weight to those facts and reach a different legal conclusion from that of the trial court.  <u>See</u> <u>Bernal v. People</u>, <u>supra</u>, 44 P.3d at 190.

> A number of factors are relevant in evaluating whether a pretrial identification procedure is impermissibly suggestive, including the size of any array, the details of the photographs themselves, and the manner of presentation of the array.  <u>Bernal v. People</u>, <u>supra</u>, 44 P.3d at 191.

> An array of six photographs, which depicts individuals matched by race, approximate age, facial hair, and a number of other characteristics and which does not include a photograph unique in some manner directly related to an important identification factor, comports with due process. <u>People v. Borghesi</u>, 66 P.3d 93, 104 (Colo. 2003); <u>Bernal v. People</u>, <u>supra</u>, 44 P.3d at 192.  However, slight differences in appearance between suspects do not render a lineup impermissibly suggestive.  <u>See</u> <u>People v. Borrego</u>, 668 P.2d 21, 23 (Colo. App. 1983).

> On appeal, defendant raises three issues with his appearance in the two arrays:  (1) he was the only man in jail clothes; (2) he was the only man with a ponytail, a scar, and

pockmarks on his face; and (3) he appeared to be decades older than others.

We have reviewed the arrays and see nothing in either the green or yellow tops that defendant wore which would necessarily or even naturally cause an average person on the street to think that they were jail clothes.  See People v. Owens, __ P.3d __ (Colo. App. No. 01CA1712, Jan. 29, 2004).

Similarly, pockmarks are evident in none of defendant's photos, and there are several men with small red marks, similar to defendant's scar, on their faces. Defendant is clearly depicted without a ponytail in the large array, and although a very small part of a ponytail is visible in defendant's picture in the small array, it is not easily discernible.  One witness testified it was noticeable if it was pointed out; another, that defendant did not even appear to have a ponytail in the small array.  All witnesses were admonished regarding the possibility of an individual's change of hair style.

When, as here, the number of photographs shown (six in each array) was not so small as to make the presentation itself unfairly suggestive, and there is nothing in the officers' manner of presentation that renders the procedure surrounding the array suggestive, the principal question is whether the picture of the accused, which matches descriptions given by the witness, so stood out from all the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit. Bernal v. People, supra, 44 P.3d at 191.

We conclude that nothing about the larger array makes defendant stand out from the other men.  All the men depicted in that array appear to be of the same age, with similar facial features, hair styles, and, to the extent visible, same attire.  See Bernal v. People, supra; People v. Borrego, supra, 668 P.2d at 23.

After reviewing the small array, however, we agree with defendant that there is a noticeable variance in age of the men depicted.  Witnesses described the perpetrator as being forty-five to fifty-five years old, and two of the men depicted appear obviously younger than that.  However, the three remaining men are certainly within defendant's approximate age range, and all the men depicted have

similar facial features, facial hair, hair styles, and hair color and are of the same race.

We recognize that the fewer photos in an array, or as here, the fewer similar photos in the array, the closer the array must be scrutinized for impermissibly suggestive irregularities. People v. Borghesi, supra, 66 P.3d at 104. However, we cannot conclude that simply because the array contained the photos of two significantly younger men, it was impermissibly suggestive. See, e.g., Farrell v. State, 622 N.E.2d 488, 494 (Ind. 1993) (three-person array not impermissibly suggestive). Even when looking at all six men depicted, we cannot conclude that defendant "so stood out from all of the other photographs" as to suggest that defendant "was more likely to be the culprit." See Bernal v. People, supra, 44 P.3d at 191; see also Tenorio v. State, 583 S.E.2d 269, 271 (Ga. Ct. App. 2003) (six-person array, where several men looked younger than defendant, not impermissibly suggestive; all men had same hair and ethnicity).

Consequently, we conclude that the photo arrays were not impermissibly suggestive and, thus, that the trial court did not err in refusing to suppress the identification evidence obtained through their use.

ECF No. 9, ex. B at 13-17.

The trial court's factual findings, after holding an evidentiary hearing in connection with Applicant's claim, are presumed correct, and Mr. Walton does not point to any clear and convincing evidence to the contrary. The Court has reviewed carefully the portions of the record relevant to the hearing on the Motion to Suppress Identification Based Upon Suggestive Photographic Lineup. ECF No. 24, trial tr., vol. I, court file, 73-74; trial tr., 3-100/pdf 28-125, 116-117/pdf 141-142, 119-124/pdf 144-149, 127-128/pdf 152-153, Oct. 25, 2000 (hearing on motions, including the motion to suppress identification). The trial court, after hearing the testimony of witnesses – a detective and three identification witnesses – and the arguments of counsel, denied the motion to suppress identification "based upon there having been a suggestive photo

lineup." ECF No. 24, trial tr., 128/pdf 153, Oct. 25, 2000. The trial court noted that the fact that there were three parties with gray eyes and three parties with brown eyes was not so "unnecessarily suggestive as to cause misidentification." ECF No. 24, trial tr., 127-128/pdf 152-153, Oct. 25, 2000. The trial court acknowledged that Mr. Walton wore an earring and "none of the other people have earrings but that alone does not cause that array to be unnecessarily suggestive," nor did his ponytail in one of the arrays. ECF No. 24, trial tr., 128/pdf 153, Oct. 25, 2000. The trial court further found there to be a number of people in "jail garb" that was visible and, therefore, not unnecessarily suggestive. ECF No. 24, trial tr., 128/pdf 153, Oct. 25, 2000. At trial, police, a detective, and identification witness testified extensively about the pretrial out-of-court identification procedure. ECF No. 24, trial tr., 6-30/pdf 494-518, 36-39/pdf 524-527, 41-46/pdf 529-534, 58-100/pdf 546-588, 144-149/pdf 632-637, 162-163/pdf 650-651, June 6, 2001.

The Court finds and concludes that the state appellate court's determination that the photo array was not impermissibly suggestive was neither contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Having made such a determination, this Court, like the state appeals court, need not reach the issue of whether the identifications were nonetheless reliable in view of the totality of the circumstances. Applicant is not entitled to federal habeas relief on claim 4.

<u>Claim 5</u>

In claim 5, Applicant contends he was denied due process by the introduction at trial of evidence of other robberies he committed.

The admission of evidence violates due process only when it denies a defendant fundamental fairness. *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (evidence violates due process only when it is so unduly prejudicial that it renders a trial fundamentally unfair). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). Furthermore, "because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks and citation omitted). The Court's "[i]nquiry into fundamental fairness requires examination of the entire proceedings." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

In *Estelle v. McGuire*, 502 U.S. 62 (1991), the Supreme Court specifically declined to hold that the admission of prior-acts evidence violated due process, thus warranting habeas relief. *See id.* at 75; *see also United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998). The Supreme Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of "'prior crimes'" evidence to show propensity to commit a charged crime. *Estelle*, 502 U.S. at 75 n.5; *see also Lott v. Trammell*, 705 F.3d 1167, 1190 (10th Cir. 2013) (evidence violates due process only when it is so unduly prejudicial that it renders a trial fundamentally unfair, regardless of whether the evidence at issue was properly admitted pursuant to state law); *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (rejecting the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served, and recognizing that the Supreme Court is not "a rule-

making organ for the promulgation of state rules of criminal procedure" and that "none

of the specific provisions of the Constitution ordains this Court with such authority.")

Because there is no clearly established Supreme Court precedent holding that a

state violates due process by permitting propensity evidence in the form of other

bad-acts evidence, *see Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), the

admission of prior bad-acts evidence cannot be contrary to clearly established Supreme

Court precedent. *Rath v. Attorney Gen. of Colo.*, No. 06-cv-00419-WYD, 2008 WL

1930633, at *6 (D. Colo. 2008), *appeal dismissed*, 290 Fed. App'x 185 (10th Cir. 2008).

Mr. Walton can prevail only if the trial court's admission of the other-acts

evidence rendered the trial so fundamentally unfair as to constitute a denial of federal

constitutional rights. *See Estelle*, 502 U.S. at 68; *see also Moore v. Marr*, 254 F.3d

1235, 1246 (10th Cir. 2001). A federal habeas court "will not disturb a state court's

admission of evidence of prior crimes, wrongs or acts unless the probative value of such

evidence is so greatly outweighed by the prejudice flowing from its admission that the

admission denied defendant due process of law." *Hopkinson v. Shillinger*, 866 F.2d

1185, 1197 (10th Cir. 1989), *overruled on other grounds by Sawyer v. Smith*, 497 U.S.

227 (1990).

The Colorado Court of Appeals disagreed that the introduction at trial of other

robberies Mr. Walton committed denied him due process:

> Evidence is <u>unfairly</u> prejudicial if it has an "undue
> tendency to suggest a decision on an improper basis,
> commonly but not necessarily an emotional one, such as
> sympathy, hatred, contempt, retribution, or horror." *Masters
> v. People*, 58 P.3d 979, 1001 (Colo. 2002) (quoting *People
> v. Dist. Court*, 785 P.2d 141, 147 (Colo. 1990)). To warrant
> exclusion of relevant evidence, however, the danger of unfair
> prejudice attending the evidence must substantially outweigh
> the legitimate probative value of the evidence. <u>See</u> <u>People</u>

v. Garner, supra; People v. Warren, supra [55 P.3d 809 (Colo. App. 2002)]; see also CRE 403.

A trial court has considerable discretion in balancing the probative value of evidence against its potential for unfair prejudice. People v. Saiz, 32 P.3d 441, 446 (Colo. 2001). On appeal of a trial court's ruling admitting evidence, we accord the evidence the maximum probative value attributable to it by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected from it. And unless a party can show that the trial court's decision was manifestly arbitrary, unreasonable, or unfair, the trial court's ruling will be upheld on appeal. See People v. Warren, supra, 55 P.3d at 815.

Here, in both the charged and the other robberies, the perpetrator attempted (by one means or another) to cover a scar on his face, used or appeared to use a handgun, forced employees into or to remain in a room with the safe, had employees fill a bag with money, took a hostage, and then left or attempted to leave through a back entrance. Defendant was identified as the perpetrator of the other robberies.

Because defendant disputed the identification evidence in this case, evidence that he committed other robberies in a similar manner was sufficiently probative to show the existence of a common plan, scheme, or design, and thus, inferentially, his identity as the robber in the present case. See generally People v. Rath, 44 P.3d 1033, 1040 (Colo. 2002). In admitting this evidence, the trial court implicitly determined that it was not unduly prejudicial. See People v. Copeland, 976 P.2d 334, 337 (Colo. App. 1998) ("Having admitted the evidence, the trial court implicitly found that its probative value was not substantially outweighed by the danger of unfair prejudice."), aff'd, 2 P.3d 1283 (Colo. 2000). And according it the maximum probative value and minimum prejudicial effect reasonably to be expected, we cannot conclude that the trial court's decision to admit it was manifestly arbitrary, unreasonable, or unfair. See People v. Kenny, 30 P.3d 734, 740 (Colo. App. 2000).

We note that the trial court instructed the jury both during and at the conclusion of trial that "[This evidence is] admitted for a limited purpose . . . to show identity, method of operation or a common plan, scheme and design. The evidence is to be considered for those purposes and not for

> any other purpose." These instructions served to alleviate
> the danger of any unfair prejudice from the admission of the
> evidence. See Cordova v. People, 880 P.2d 1216, 1218-19
> (Colo. 1994) (cautionary limiting instruction served as an
> adequate protective device against undue prejudice to
> defendant).
>
> Consequently, we discern no abuse of the trial court's
> discretion in admitting evidence of defendant's other
> aggravated robberies.

ECF No. 9, ex. B at 18-21.

The similarity between Mr. Walton's prior robberies and the robbery of which he was accused here was relevant because his defense at trial was mistaken identification. The trial court gave a limiting instruction to the jury multiple times throughout the trial concerning the reasons for introducing evidence of prior robberies. During the trial, before an identification witness was questioned about a prior robbery, the state court instructed the jury that "certain evidence is about to be admitted" for the limited purpose of providing "evidence on the question of identity or as to whether there was a common plan, scheme, design, or method of operation. It's only to be considered for these purposes and not any other purpose." ECF No. 24, trial tr., 12-13/pdf 398-399, June 5, 2001. Before another identification witness was questioned about a different prior robbery, the Court repeated the advisement to the jury that "certain evidence" was "about to be admitted" for the limited purpose "to show the identity, method of operation, or common plan, scheme, and design" and was "admittable only for those purposes and not for any other purpose." ECF No. 24, trial tr., 31/pdf 417, June 5, 2001.

During the cross-examination of a police officer, the trial court again gave a limiting instruction before the jury heard testimony "with regard to another transaction," warning jurors that the evidence regarding one of the prior robberies was about to be

admitted for the same "limited purpose," i.e., to show the "identity, method of operation or whether there was a common plan and scheme, design." ECF No. 24, trial tr., 67-68/pdf 453-454, June 5, 2001. Again, before an identification witness was questioned about a prior robbery, the trial court advised the jury the evidence was "admitted for a limited purpose," i.e., "to show identity, method of operation or a common plan, scheme and design," and was "to be considered for those purposes and not for any other purpose." ECF No. 24, trial tr., 59/pdf 547, June 6, 2001. Before another identification witness was questioned about a prior robbery, the trial court reiterated the limiting instruction, reminding jurors that "this evidence is admitted for the limited purpose to show the question of identity, method of operation or common plan, scheme or design" and was "to be only considered those purposes and not for any other purpose." ECF No. 24, trial tr., 81-82/pdf 569-70, June 6, 2001.

Before the testimony of a forensic artist, a police officer who created a composite drawing based upon witness descriptions, the Court once again instructed the jury that the officer's testimony dealt with a prior robbery different from the "specific acts charged" in No. 98CR2420 and was being "admitted for limited purposes," i.e., to show whether there was common "identity, method of operation, a common plan, scheme or design," and should be considered "only for those purposes, not for any other purposes." ECF No. 24, trial tr., 103/pdf 591, June 6, 2001.

Before publishing the videotapes of prior robberies, the Court reminded the jury the videotaped earlier acts related only to the "limited purposes of showing whether there was common identity, method of operation or common plan, scheme and design," and were to be consider "for those purposes only." ECF No. 24, trial tr., 151-152/pdf 639-640, June 6, 2001. In advance of more witness testimony about prior robberies,

22

the state court again instructed the jury that the evidence was being admitted for the "limited purpose" of reflecting on "the question of identity, method of operation, whether there is a common plan, scheme or design," and was "to be considered for that purpose and not for any other purpose." ECF No. 24, trial tr., 5/pdf 662, June 7, 2001. The trial court again gave a limiting instruction to the jury before a series of witnesses offered testimony about earlier robberies. ECF No. 24, trial tr., 26/pdf 683, 57/pdf 714, June 7, 2001. At the close of trial, the state court again instructed the jurors not to "consider evidence admitted for a limited purpose except for the limited purpose for which it was admitted." ECF No. 24, trial tr., 101/pdf 835, June 8, 2001.

It is clear from the state record that, because Mr. Walton disputed the identification evidence, evidence of his other robberies committed in a similar manner was sufficiently probative. The state record shows that the trial court repeatedly instructed the jury to consider the other-acts evidence only for the specified, limited purpose of showing a common plan, scheme or design, modus operandi, motive, or intent, and for no other purpose. The probative value of the prior robberies, in light of the trial court's limiting instruction, lessened any potential for unfair prejudice. The state appeals court balanced the probative value of the evidence against the danger of unfair prejudice and concluded that the probative value was not outweighed substantially by a danger of unfair prejudice.

The Court does not find that the probative value of the prior-acts evidence was outweighed substantially by any unfair prejudice. The evidence cannot be described as "so unduly prejudicial that it render[ed] the trial fundamentally unfair." *Payne*, 501 U.S. at 825. Having decided as such, the Court does not find that having the jury consider the other-acts evidence for a limited, specified purpose rendered the trial as a whole

23

fundamentally unfair as to constitute a denial of federal constitutional rights. Therefore, this Court finds that the state appellate court's decision was not contrary to clearly established federal law.

Claims 6(a) and (b)

Applicant argues that his rights to testify and to present a defense were violated when the trial court: (a) limited some of his answers on cross-examination to "yes" or "no," and (b) did not allow him to testify concerning the circumstances surrounding one of his prior felony convictions.

The Supreme Court repeatedly has held that "the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (alterations and quotation marks omitted).

The Colorado Court of Appeals rejected Applicant's claims as follows:

> Few rights are more fundamental than the right of the accused to put before the jury evidence that might influence the determination of guilt. People v. Richards, 795 P.2d 1343, 1345 (Colo. App. 1989). Such evidence includes a defendant's own testimony. See People v. Curtis, 681 P.2d 504, 509-10 (Colo. 1984) (recognizing a defendant's fundamental right to testify in his or her own defense). However, the right to present a defense – and, correspondingly, defendant's right to testify in his or her own defense – is not absolute; it requires only that the accused be permitted to introduce all relevant and admissible evidence. People v. Harris, 43 P.3d 221, 227 (Colo. 2002); see Taylor v. Illinois, 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988) ("The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").
>
> Here, defendant wanted to explain on direct examination the circumstances underlying his prior conviction for attempted murder, a matter relevant and

24

admissible . . . only for impeachment purposes. The extent of examination into circumstances of a prior felony convictions [sic] lies within the trial court's discretion. See, e.g., People v. Bradley, 25 P.3d 1271, 1274 (Colo. App. 2001). We conclude that the trial court did not abuse its discretion under CRE 401, 403, and 611 in precluding defendant from relating irrelevant information which likely would have opened the door to a mini-trial on collateral matters. See People v. Cole, 654 P.2d 830, 831-34 (Colo. 1982) (trial court abused it[s] discretion in permitting witnesses to testify to irrelevant and collateral matters); People v. Taylor, 190 Colo. 210, 214, 545 P.2d 703, 706 (1976) (inquiries into details of prior arrests, admitted for impeachment, lead to impermissible mini-trials in which "the sideshow could indeed 'take over the circus'").

Similarly, we conclude that the trial court did not abuse its discretion under CRE 611 by requiring defendant to respond simply in terms of "yes" or "no" to questions posited by the prosecution during cross-examination. As the trial court indicated, defendant would have his chance to elaborate on those answers during redirect examination by his own counsel.

In sum, we conclude that the proper exercise of the trial court's discretion in applying standard evidentiary rules did not impermissibly infringe on defendant's fundamental rights to present a defense and testify on his own behalf. See People v. Gutierrez, 1 P.3d 241, 244 (Colo. App. 1999) (trial court has broad discretion to determine relevance).

ECF No. 9, ex. B at 22-23.

On direct examination, the state court sustained the prosecution's objections to questions by the defense about details surrounding Mr. Walton's prior attempted murder conviction. ECF No. 24, trial tr., 28-29/pdf 762-763, June 8, 2001. On cross-examination, the prosecution questioned Mr. Walton as to whether the identification witnesses were lying when they identified him as the person who committed the robberies, both prior and the one in question, and specifically asked Applicant to limit himself to a "yes" or "no" answer. The trial court overruled defense counsel's objection.

ECF No. 24, trial tr., 48-51/pdf 782-785, June 8, 2001. In response to objections by the prosecution, the trial court continued to remind Mr. Walton only to answer the question asked. ECF No. 24, trial tr., 52-53/pdf 786-787, 56/pdf 790, June 8, 2001. On redirect, defense counsel had the opportunity to question Mr. Walton about the identification witnesses' testimony. ECF No. 24, trial tr., 64-65/pdf 798-799, June 8, 2001.

It was permissible for the state court to exclude the details surrounding Applicant's prior attempted murder conviction because (1) it was only the conviction itself, not the details of the offense, that was admitted; (2) the conviction was admitted only for impeachment purposes; and (3) allowing Applicant to introduce certain details of the offense made it highly likely that the door would be opened to rebuttal evidence, leading to a mini-trial concerning the facts underlying the prior conviction, facts that were not at issue. Similarly, it was permissible to limit Applicant's testimony on cross-examination to "yes" or "no" at one point because (1) his answers repeatedly delved into narratives of little or no relevance, and (2) Mr. Walton's attorney was free to elicit Applicant's elaborations, to the extent they were relevant, on redirect examination.

To the extent Mr. Walton asserts that the state appeals court's opinion involved an unreasonable determination of the facts in light of the evidence presented, he fails to rebut those findings by clear and convincing evidence. *See* § 2254(d)(2); § 2254(e)(1). The Court finds that the state appeals court's decision that limiting Mr. Walton's testimony did not impermissibly infringe on defendant's fundamental rights to present a defense and testify on his own behalf was not contrary to or an unreasonable application of clearly established federal law.

<u>Claims 7(a) and (c)</u>

Finally, Mr. Walton argues ineffective assistance of counsel based on trial

26

counsel's failure to: (a) challenge Applicant's detention under the Interstate Agreement on Detainers Act (IAD), and (c) sufficiently investigate and present exculpatory evidence.

It was clearly established when Mr. Walton was convicted that a defendant has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). Ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698.

To establish that counsel was ineffective, Mr. Walton must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Mr. Walton's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). Furthermore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Under the prejudice prong, Mr. Walton must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 131 S. Ct. at 792 (stating that "[t]he likelihood of a different result must be substantial, not just

27

conceivable.").  In determining whether Mr. Walton has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Walton.  *See Boyd*, 179 F.3d at 914.

Finally, conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief.  *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).  If Mr. Walton fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claims must be dismissed.  *See Strickland*, 466 U.S. at 697.

The Colorado Court of Appeals applied the two-part *Strickland* test in rejecting Mr. Walton's ineffective-assistance-of-counsel claims.  The state appeals court affirmed the district court's rejection of Mr. Walton's IAD argument by reciting generally the law governing ineffective-assistance-of-counsel claims, including citing to *Strickland*, and applying the law to the IAD claim:

> Once he makes a request for disposition of the charges against him in compliance with the IAD, a defendant must be brought to trial within 180 days.  *See* § 24-60-501, art. III(a); *see also People v. Harter*, 216 P.3d 606, 609 (Colo. App. 2009).  However, the IAD allows a necessary or reasonable continuance for good cause shown.  *See* § 24-60-501, art. III(a).
>
> There was evidence at the hearing that the court's policy at the time of defendant's case was to prevent cases from being dismissed based on violations of the IAD.  There was also evidence that there was a "very strong likelihood" that the prosecutor would have been ready to take the case to trial in the short timeframe because defendant's case was part of the Chronic Offender Program (COP) and he was "ahead of the curve" in his preparation of the case.  Importantly, there was no evidence that the court would not have granted him a trial within the 180-day timeframe, nor that the court would have refused to grant a necessary or reasonable continuance for good cause shown.  Therefore, we presume that the trial court would have complied with the law.  *See Walton*, 167 P.3d at 168.

> Even though he testified at the hearing, defendant did not present any evidence that he would have insisted on going to trial within 180 days instead of waiving his rights under the IAD.  Additionally, there was no evidence that the prosecutor would have offered defendant a plea to a lesser sentence.  To the contrary, the evidence showed that it was unlikely that the prosecutor would have done so because very few offers were made to COP defendants, as only "slam-dunk" cases were part of the COP and the COP had extensive resources to prosecute cases.
>
> Under these circumstances, we conclude that defendant did not prove by a preponderance of the evidence that his defense was prejudiced.  Because we conclude that defendant did not prove prejudice, we need not consider whether trial counsel's performance was deficient.  *See* [*People v.*] *Karpierz*, 165 P.3d [753,] . . . 759 [(Colo. App. 2006)].

ECF No. 9, ex. C at 7-8 (internal heading omitted).

Mr. Walton raised the claim that counsel failed to challenge his detention under the IAD in his Colo. R. Crim. P. 35(c) postconviction motion, which the state appeals court affirmed in part, reversed in part, and remanded for a hearing on a claim of ineffective assistance of counsel.  The trial court's factual findings from the evidentiary hearing held in connection with Applicant's claim are presumed correct, and Mr. Walton does not point to any clear and convincing evidence to the contrary.

Mr. Walton also fails to demonstrate that the Colorado Court of Appeals' affirmance of the trial court's denial of his ineffective-assistance-of-counsel claim was contrary to or an unreasonable application of clearly established law.  He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.  He also fails to demonstrate that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct.

786-87.  It is not unreasonable to reject conclusory allegations regarding the prejudice

prong because such allegations are not sufficient to warrant habeas relief.  *See*

*Humphreys*, 261 F.3d at 1022 n.2.  Mr. Walton is not entitled to habeas corpus relief on

claim 7(a).

Finally, Mr. Walton argues he receive ineffective assistance based upon a failure

of trial counsel to investigate and present exculpatory evidence sufficiently.

Specifically, he argues:

> In Mr. Walton's prior conviction in Utah, the type of
> robbery (al[be]it a grocery story), was completely different.
> The prosecution argued it was identical to that committed in
> Colorado, yet counsel failed to obtain and present proof that
> the modus operandi was entirely different in that robbery.

ECF No. 1 at 8.

The Colorado Court of Appeals explained its reason for affirming the state trial

court's rejection of this claim as follows:

> We disagree with defendant that his attorney was
> ineffective in failing to argue that, unlike the robbery here,
> defendant committed the robbery in Utah using high-tech
> equipment and wore no disguise.
>
> The record is to the contrary.  It shows that
> defendant's lawyer asserted that the Utah robbery was not
> similar to the robbery here, cross-examined the victim of the
> Utah robbery about defendant's use of an earpiece (the
> high-tech equipment), an item not used in the robbery here,
> and the victim of the Utah robbery testified that defendant
> wore a bandage under his eye, which could be described as
> a disguise.  The fact that defendant's lawyer did not seek to
> further distinguish the robberies is simply a matter of trial
> strategy and cannot constitute ineffective assistance of
> counsel.

*People v. Walton*, 167 P.3d 163, 169 (Colo. App. 2007).

"[I]nformed strategic or tactical decisions on the part of counsel are presumed

correct, unless they were completely unreasonable, not merely wrong." *Anderson v.*

*Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotation marks and citation omitted). Here, Applicant has made no showing that counsel's decisions concerning the efforts to distinguish the in-state and out-of-state robberies was not based on a valid strategic choice. *See Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002) (finding that defendant bears "the burden of showing that counsel's action or inaction was not based on a valid strategic choice.").

After carefully reviewing the record, the Court finds that the Colorado Court of Appeals applied the appropriate factors and reached a reasonable decision based on the evidence presented in the state court proceeding. ECF No. 24, trial tr., 40/pdf 697, June 7, 2001. Furthermore, the state appellate court's determination did not run afoul of federal law. Applicant thus is not entitled to habeas relief on claim 7(c).

### III. Conclusion

For the reasons stated above, Mr. Walton is not entitled to relief on any of his remaining claims. The application will be denied.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he also must pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Accordingly, it is

ORDERED that the habeas corpus application (ECF No. 1) is denied, and the action is dismissed with prejudice. It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.  It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied without prejudice to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit.  It is

FURTHER ORDERED that any pending motions are denied as moot.

DATED May 1, 2014, at Denver, Colorado.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge